1
2
3
4
5
6
7
8
9
10
11

Andrew Gunem (SBN 354042)
Samuel J. Strauss (to be admitted *Pro Hac Vice*)
Raina C. Borrelli (to be admitted *Pro Hac Vice*)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

*Attorneys for Plaintiff and the Proposed Class*
[Additional Counsel Listed in Signature Block]

## THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| DANIELLE ARNOLD and XANDER LUCIANO, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; and ANCESTRY.COM LLC, a Delaware limited liability company,<br>                    Defendants. | Case No. 8:24-cv-02810-FWS-DFM<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF CAL CIV. CODE § 3344; CALIFORNIA MISAPPROPRIATION OF NAME OR LIKENESS; AND CAL. BUS. & PROF. CODE § 17200 ET SEQ. ("UCL")**<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Plaintiffs DANIELLE ARNOLD and XANDER LUCIANO, by and through their attorneys, make the following allegations on information and belief, except as to factual allegations pertaining to Plaintiffs, which are based on personal knowledge.

## NATURE OF ACTION

1.      California law protects every individual's right to control the commercial use of their name, persona, and identity. Cal. Civ. Code § 3344. Californians have the right to exclude

anyone from using their name and persona to advertise without their prior consent. *Id*. "Any person who knowingly uses" a name and persona "for purposes of advertising or selling, or soliciting purchases of, products . . . or services, without [Plaintiff's] prior consent," thereby violates California law. *Id*.

2.      Plaintiffs Danielle Arnold and Xander Luciano ("Plaintiffs") and members of the proposed class (the "Class" or "Class members") seek damages, an injunction, and additional relief from Defendants ("Ancestry" or "Ancestry.com"), who own and operate the website www.ancestry.com. Ancestry used Plaintiffs' and Class members' names and personas to promote paid subscriptions to the Ancestry website without consent in violation of Californias right of publicity statute, Cal Civ. Code § 3344, California common law prohibiting misappropriation of a name or likeness, and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.

3.      Plaintiffs and Class members are private individuals who have no relationship with Ancestry. Plaintiffs and the Class have never used Ancestry.com, nor did they provide their names, photographs, or any other personal information to Ancestry.

4.      Plaintiffs were seriously distressed to discover that Ancestry is using the names and photographs of California students and teachers without their consent to advertise paid subscriptions to Ancestry.com.

5.      Plaintiffs and the Class did not consent to Ancestry using their names, photographs, and personas to promote Ancestry.com subscriptions.

6.      Ancestry uses Plaintiffs' and Class members' names and likenesses in at least three advertising techniques. In all three advertising techniques, Ancestry displays the Plaintiffs' and Class members' photographs in low-resolution or time-limited formats to a potential customer. Ancestry promises the potential customer that purchasing a paid subscription to Ancestry.com will reveal the full versions of Plaintiffs' and Class member's photographs and personal information. Ancestry promises that a paid subscription will also deliver many additional services, including the ability to search for and view billions of additional records

about millions of other individuals. Searchable records included with an Ancestry.com subscription include yearbook photos, marriage records, baptism records, death certificates, divorce records, photographs of grave sites, and others.

7.      In the first of its advertising techniques, Ancestry provides a publicly accessible landing page on which a visitor may search by name and location for any person. In response to searches for the Plaintiffs' and Class members' names, Ancestry delivers a list of yearbook photographs in its possession showing the Plaintiffs' and Class members' names and faces. Plaintiffs' and Class members' photographs are accompanied by promotional text urging the visitor to "Sign Up Now" for an Ancestry.com subscription. The promotional text promises that "There's more to see" about the Plaintiffs and Class members if the visitor buys a subscription, including higher-resolution photographs and additional personal information about Plaintiffs and Class members, such as city of residence, estimated age, and high school graduation year.

8.      In the second advertising technique, Ancestry sends promotional emails and on-site messages to users who have provided their email addresses to Ancestry but have not yet purchased a paid subscription plan. These emails and messages use the Class members' names and identities. For example, Ancestry sends promotional emails to non-paying users with the subject line "What should you explore next for [Class member]?" A link in the body of the email encourages the user to click on the Class member's name to view records about her. Users who click the link and attempt to view records about the Class member receive in response a webpage asking the user to subscribe to Ancestry.com.

9.      In the third advertising technique, Ancestry offers a two-week "free trial" membership during which users may access and use the full range of services associated with an Ancestry website subscription. "Free trial" users may search for, view, print, and share the Plaintiffs' and Class members' photographs and personal information including cities of residence, estimated birth years, and graduation dates. Ancestry's sole purpose for using the Plaintiffs' and Class members' photographs and personal information as part of its "free trial" membership is to solicit the purchase of paid memberships.

10.     By using Plaintiffs' and Class members' names, photographs, and identities in its advertising, Ancestry misleads the consuming public into believing Plaintiffs and Class members are Ancestry.com users, willingly uploaded their personal information to Ancestry.com, and endorse Ancestry's subscription product. In fact, Plaintiffs and the Class have no relationship with Ancestry, had no knowledge their names and photographs were being used, and do not approve of Ancestry's use of their names and likenesses to advertise Ancestry.com subscriptions. Ancestry's website and advertising communications fail to disclose that Plaintiffs and the Class are unaffiliated with Ancestry.

11.     Ancestry does not present the Plaintiffs' and Class members' photographs as "samples" advertising the purchase of the photographs themselves. Ancestry uses Plaintiffs' and Class members' names and photographs to advertise subscriptions to Ancestry.com.' An Ancestry.com subscription includes far more than access to the Plaintiffs' photographs. At costs ranging between $24.99 and $49.99 per month, a subscription to Ancestry.com entails a wide range of services, including the ability to: "Grow a family tree with exclusive search tools"; "Connect with fellow members"; "Access 15+ billion records" from the U.S.; "Expand your search with 3+ billion worldwide records"; "Find stores among 142+ million pages in the Newspapers.com Basic subscription"; "Explore 537+ million original military records on Fold3.com"; and "Enjoy premium support with a dedicated 1-800 number."

12.     Ancestry is the sole author, designer, and implementor of the advertising techniques and messages giving rise to this lawsuit. Ancestry does not host user-generated content on any part of the website relevant to this lawsuit. Ancestry is the sole curator, designer, and creator of the content described in this Complaint.

13.     Flouting California law, Ancestry did not notify Plaintiffs or obtain their consent prior to publishing their names and photographs on its advertising webpages. Accordingly, Plaintiffs do not know with certainty how Ancestry obtained their names and photographs. Ancestry's website states that the photographs were originally printed in school yearbooks but does not disclose how Ancestry obtained copies of Plaintiffs' and Class members' school

yearbooks.

14.    On information and belief, Ancestry obtained the names and yearbook photographs in its database by paying licensing to third parties in exchange for the purported right to make commercial use of the names and photographs therein. No such third party entity obtained Plaintiffs' prior consent before making commercial use of Plaintiffs' name and identity, as required by California law. On information and belief, no such third party entity obtained any Class members' prior consent.

15.    Ancestry appropriated Plaintiffs' and Class members' photographs without permission from the Plaintiffs and the Class, the photographers who took the pictures, the authors who created the school yearbooks, or the publishers of the school yearbooks. Ancestry does not hold copyright in Plaintiffs' or Class members' yearbooks, nor does it have permission from the copyright holder to republish or distribute Plaintiffs' or Class members' yearbooks.

16.    Plaintiffs and the Class may have consented to have their photographs taken for school yearbooks intended solely for print distribution amongst a narrow circle of friends, faculty, family, and schoolmates. Plaintiffs and the Class did not consent to the commercial use of their photographs to promote a website, nor to the worldwide distribution of their photographs on the Internet.

17.    Ancestry fails to provide any mechanism by which Plaintiffs or the Class may request that their photographs and personal information be removed from Ancestry's website. Nor does Ancestry allow Plaintiffs or the Class to opt out of the use of their names and photographs in advertisements for subscriptions to Ancestry.com.

18.    California law recognizes the intellectual property and privacy rights of individuals in controlling the use of their names, photographs, likenesses, and personas for commercial purposes.

19.    By using Plaintiffs' and Class member's names, likenesses, photographs, and personas in advertisements for website subscriptions without consent, Ancestry violated their intellectual property and privacy rights. Plaintiffs and Class members have the right not to have

their names, likenesses, photographs, and personas exploited to promote a website with which they have no relationship and which they have no interest in promoting. Plaintiffs and Class members have an economic interest in their names, likenesses, photographs, and personas, which Ancestry has stolen, and a privacy interest in their names, likenesses, photographs, and identities, which Ancestry has violated. Ancestry has been unjustly enriched through its actions. Plaintiffs and Class members have the right to recover the money Ancestry earned exploiting their names, likenesses, photographs, and personas.

20.    By these actions, Defendants haves violated and continue to violate California's Right of Publicity statute, codified in Cal. Civ. Code § 3344; California common law prohibiting misappropriation of a name or likeness; and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*. Ancestry used multiple aspects of Plaintiffs' and Class members' personas for the commercial purpose of selling website subscriptions, including names, photographs, images, likenesses, distinctive appearances, and personal information. Ancestry failed to obtain Plaintiffs' or Class members' prior consent for this commercial use. Class members' personas have commercial value to Ancestry, to the Class members, to the many companies that compete with Ancestry in the market for selling personal information, and to the schools and/or publishing companies who published the yearbooks from which Ancestry misappropriated Class members' names and photographs.

21.    Plaintiffs and Class members have suffered injury through the unlawful taking of their valuable intellectual property; through the invasion of their privacy rights protected by statute and common law; through Ancestry's unlawful profiting from its exploitation of their names, personas, and personal information; and through the mental anguish and harm to peace of mind caused by the use of their identities to promote a product they expressed no wish to promote. Plaintiffs and Class members are entitled to relief including statutory damages, disgorgement of profits, royalties for the use of their names and personas, restitution of the value of their names and personas, an injunction prohibiting Ancestry's unlawful conduct, an award of attorneys' fees, expenses, and costs, and declaratory and injunctive relief.

**PARTIES**

22.     Defendant ANCESTRY.COM OPERATIONS INC. is a Delaware corporation with its headquarters in Lehi, Utah. It conducts business under the brand names "Ancestry.com," "Ancestry," and other brand names associated with the various websites and services it owns and operates. ANCESTRY.COM INC. is a Delaware corporation with its headquarters in Lehi, Utah. Defendant ANCESTRY.COM LLC is a Delaware limited liability company with its headquarters in Lehi, Utah.

23.     The Defendants own and operate the website www.ancestry.com. Plaintiffs refer to the Defendants collectively as "Ancestry." Ancestry advertises and provides its subscription services to consumers throughout this District, California, and the United States.

24.     Plaintiff Arnold is a resident of Orange County, California, where she intends to remain.

25.     Ms. Arnold has never visited, used, or subscribed to the website Ancestry.com.

26.     Ms. Arnold was a student at Esperanza High School in Anaheim, California.

27.     Plaintiff Luciano is a resident of Ventura County, California, where he intends to remain.

28.     Mr. Luciano has never visited, used, or subscribed to the website Ancestry.com.

29.     Mr. Luciano was a student at Esperanza High School in Anaheim, California.

**JURISDICTION AND VENUE**

30.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (A) members of the putative class are citizens of a state different from at least one defendant. According to available public records, none of the Defendants are incorporated in California or have their principal place of business in California. The proposed class is composed of California residents. (B) The proposed class consists of at least 100 members. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Cal. Civ. Code § 3344 provides for damages "in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her

as a result of the unauthorized use, and any profits from the unauthorized use." Because Ancestry advertises using many thousands of records from California yearbooks, the amount in controversy is well over the jurisdictional amount.

31.    This Court has specific personal jurisdiction over Ancestry because a significant portion of the events giving rise to this lawsuit occurred in this state, including: Ancestry's copying of Plaintiffs' and Class member's personal information from yearbooks or other sources located in California; Ancestry's display of Plaintiffs' and Class member's names and photographs in advertisements expressly directed at California residents, including Plaintiffs' and Class member's families; Ancestry's failure to obtain required consent from Class members in California; and Ancestry's violation of the intellectual property rights of Plaintiffs and Class members who reside in California.

32.    Both named Plaintiffs reside in this state and District. Ancestry violated Plaintiffs' intellectual property and privacy rights and misappropriated their names, personal information, and likenesses, the loci of which are in this state and District. Ancestry failed to obtain the required consent in this state and District. Ancestry displayed advertisements using Plaintiffs' and Class members names, personal information, and personas in this state and District.

33.    Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this district. A substantial portion of the class members reside in this state and district. Both named Plaintiffs reside in this district.

**DEFENDANT'S ILLEGAL MISAPPROPRIATION AND COMMERCIAL USE OF PLAINTIFFS' NAMES AND PERSONAS**

34.    Like all California residents, Plaintiffs have the right to control the commercial use of their names, personas, and identities. Cal. Civ. Code § 3344. They have the right to exclude anyone from using their names and personas to advertise without their consent. *Id.* "Any person who knowingly uses" a Californian's name and persona "for purposes of advertising or selling, or soliciting purchases of, products . . . or services, without [their] prior consent," thereby violates

California law. *Id.*

35.     Plaintiffs are private individuals who have no relationship with Ancestry. They have never visited, used, or subscribed to Ancestry.com.

36.     Plaintiffs did not give consent to Ancestry to use their names, photographs, likenesses, or personas in any way. Ancestry never requested their prior consent, as required by California law. Had Ancestry requested their consent, Plaintiffs Arnold and Luciano would not have provided it.

37.     Neither Ancestry, nor any third party from whom Ancestry may have purchased and/or licensed copies of Plaintiffs' photographs, ever contacted either Plaintiff to notify them of Ancestry's commercial use, or to request their consent.

38.     Plaintiffs highly value their personal privacy and ability to control and prevent the commercial use and distribution of their personal information, likenesses, and personas without their consent.

39.     Ancestry uses multiple records containing Plaintiffs' names, photographs, images, and personas to advertise subscriptions to Ancestry.com.

40.     Ancestry uses Plaintiffs' records in at least three types of advertisements. In the **first** type, Ancestry provides a publicly accessible landing page on which visitors may and have searched for Plaintiffs by name, location, and/or birth year, as shown below:



41.    Visitors who searched for Ms. Arnold or Mr. Luciano received in response records derived from Esperanza High School yearbooks in which they appeared. The records each included Plaintiffs' names and locations. Most of the records also included photographs identifiably depicting Plaintiffs' faces.

42.    Prior to the preparation of this Complaint, counsel for Plaintiffs informed Ancestry that Ms. Arnold and Mr. Luciano intended to bring suit. In an apparent attempt to frustrate Plaintiffs' collection of evidence to support Plaintiffs' claims, Ancestry rendered their names un-searchable on its site before counsel for Ms. Arnold and Mr. Luciano prepared this Complaint.[1] Accordingly, the paragraphs below rely in part on screenshots of the Plaintiffs that counsel collected before Ancestry's attempt to hide its use of their yearbooks, and partly on screenshots of other individuals who appear in Esperanza High School yearbooks (the "anonymous exemplary Class members"). The names and photographs of the anonymous exemplary Class members remain searchable on the site, and are presented by Ancestry in the same form and format that Ms. Arnold's and Mr. Luciano's were before Ancestry deliberately impeded counsel's collection of evidence. For the privacy of non-parties to this lawsuit – and to prevent Ancestry from deliberately destroying yet more evidence – Plaintiffs' counsel have obscured the names and photographs of the anonymous exemplary Class members in all screenshots below.

---

[1] Counsel anticipate that Ancestry will falsely claim they rendered Plaintiffs' names unsearchable because "that's the relief Plaintiffs are asking for." This is obviously incorrect, as Ancestry well knows. Plaintiffs seek monetary compensation under § 3344 for Ancestry's past non-consensual use of their personas. Plaintiffs also seek to represent a class of similarly situated individuals.

FIRST AMENDED CLASS ACTION COMPLAINT – 11

1   43. The screenshot below depicts the result of a search for an exemplary Class

2 member who appears in Esperanza High School yearbooks. Users who searched for Ms. Arnold

3 or Mr. Luciano received a functionally identical list. The black bars were added by Plaintiffs'

4 counsel. In the original version as Ancestry displayed it to potential subscribers, the second

5 column displayed Plaintiffs' full names, and the last column displayed their faces. **Users who**

6 **clicked on any of the images of Plaintiffs' faces were brought directly to a screen soliciting**

7 **a paid subscription**. *See* Para. 46 *below*.



44.     Prior to Ancestry's deliberate attempt to frustrate counsel's collection of evidence, counsel collected the following screenshots, which depict Ms. Arnold's and Mr. Luciano's faces as they appeared in the "View Image" column shown above before Ancestry rendered their names unsearchable. Both are readily identifiable.





45.    Visitors who hovered over the "View Record" link were shown a promotional pop-up promoting Ancestry subscriptions, which is shown below. The pop-up tied the purchase of a subscription to the prospect of seeing a higher quality image of, and learning more information about, the named Plaintiffs. As shown below, the pop-up promises that "There's more to see" about the named Plaintiffs if the user clicks "Sign Up Now," including "A picture of the original document" and additional personal information about the named Plaintiffs. In the original pop-ups as displayed on Ancestry's website, the Plaintiffs' full names appear beneath the black box adjacent to "NAME:", and identifiable photographs of their faces like those shown in the preceding paragraph appear beneath the portrait-shaped black box beneath "A picture of the original document."



46.     Visitors who clicked "Sign Up Now" in the pop-up above, or who clicked on the images of Plaintiffs' faces shown in search results (*see* ¶ 43), were shown a payment page soliciting the purchase of a membership plan for $24.99 per month. The page says that visitors are paying to receive a broad range of services in addition to information about Plaintiffs, including access to the names, images, and personal information about many other individuals. The additional services also include access to "The world's most comprehensive record collection" and the ability to create and grow a "family tree".



47.     On information and belief, Ancestry has displayed lists of search results to visitors that contained one or more of the records depicting each of the named Plaintiffs' face and name, including to visitors in California. On information and belief, one or more visitors viewed the pop-up and/or clicked on the face corresponding to each named Plaintiff, leading to the subscription solicitation page, including one or more visitors in California.

48.    In the **second** advertising technique, Ancestry sends promotional emails incorporating Class members' names and personas to potential subscribers. On information and belief, Ancestry has sent such emails incorporating the name Plaintiffs' names, including to people in California. Examples of such emails, with names redacted for privacy, are shown below:



49.     Ancestry sends these and similar emails bearing the named Plaintiffs' and Class members' names and personas to users who have not yet purchased a paid subscription plan. Users who click on the name shown in the email and attempt to review records about the named Plaintiffs or the Class member receive a web page soliciting a subscription to Ancestry.com at prices ranging from $24.99 to $49.99 per month:



50.     In the **third** advertising technique, Ancestry allows users who have not yet signed up for a paying subscription to search for and view Plaintiffs' photographs and personal information as part of a two-week "free trial" membership. Each of the records corresponding to the Plaintiffs is available to free trial users, and on information and belief, has been viewed by at least one free trial user, including at least one in California. The records include full-resolution photographs of the Plaintiffs that plainly identify them, and personal information including their names, locations, and places of work that also plainly identify them.

51.     Ancestry's sole purpose in using Plaintiffs' photographs, names, and personal information as part of its "free trial" membership is to solicit the purchase of paid memberships from its "free trial" members.

52.     Plaintiffs do not know how Ancestry obtained their names, photographs, and personal information. The photographs appear to have been taken from the yearbooks Esperanza High School produced for students, faculty, and family. Plaintiffs did not give permission for their names and photographs to appear on Ancestry.com, nor did they consent to their use by Ancestry for a commercial purpose of any kind.

53.     Ancestry appropriated Plaintiffs' persona swithout permission from Plaintiffs, the photographer who took their pictures, the authors who created the high school yearbooks, or the publishers of the high school yearbooks. Ancestry does not hold copyright in yearbooks from Esperanza High School, nor does it have permission from the copyright holder to republish or distribute the yearbooks or the photographs contained therein.

54.     Plaintiffs have intellectual property and privacy interests in their photographs, names, likenesses, and personas recognized by California statutory and common law. They have the right to exclude anyone from making commercial use of their personas without their permission.

55.     Ancestry has injured Plaintiffs by taking their intellectual property without compensation; by invading their privacy rights protected by California statutory and common law; and by unlawfully profiting from its exploitation of their personas.

56.     Ancestry's illegal actions caused Plaintiffs mental anguish and disturbed their peace of mind. Plaintiffs are deeply uncomfortable that Ancestry is profiting from its use of their names, photographs, and personas in advertisements for a website they do not use, endorse, or approve of. Plaintiffs believe their personas are rightly theirs to control. Ancestry's illegal use has left them worried and uncertain about their inability to control how their names and personas are used. Plaintiffs feel that Ancestry's non-consensual commercial use of their names and personas is an alarming invasion of their privacy and intellectual property rights.

57.     Through the foregoing actions, Ancestry used multiple aspects of Plaintiffs' personas for the commercial purpose of selling website subscriptions, including their names, photographs, images, likenesses, distinctive appearances, and personal information. Ancestry failed to obtain Plaintiffs' prior consent for this commercial use. Plaintiffs' identities have commercial value to Ancestry, to Plaintiffs, to the many companies that compete with Ancestry in the market for selling personal information, to the school where Plaintiffs were students, and to the yearbook publisher who created and sold the yearbooks from which Ancestry misappropriated their images.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs bring this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(43). Plaintiffs seek to represent the following class: **All California residents who are not Ancestry.com subscribers and whose names and yearbook photographs Ancestry uses to promote website subscriptions.**

59.     Excluded from the proposed Class are Plaintiffs' counsel; Ancestry, its officers and directors, counsel, successors, and assigns; any entity in which Ancestry has a controlling interest; and the judge to whom this case is assigned and the Judge's immediate family.

60.     **Numerosity.** The members of the proposed Class are so numerous that joinder of individual claims is impractical. Ancestry represents that its database of yearbook photographs includes 730 million records. Of those, over 70 million records correspond to schools in California.

61.    **Commonality and Predominance.** There are significant questions of law and fact common to the Class members. Common questions include:

    a.  Whether Defendant's misappropriation and commercial use of names and personal information in the advertising techniques described in this Complaint constitutes the knowing use without prior consent of another's name and persona for the purposes of advertising products within the meaning of Cal. Civ. Code § 3344.

    b.  Whether Defendant solicited and obtained consent from Plaintiffs and the Class members prior to using their personas in promotional advertising flows, as required by Cal. Civ. Code § 3344.

    c.  Whether Defendant's commercial use of Plaintiffs' and Class members' names and personal information in advertisements falls within the exceptions for "use in connection with any news, public affairs, or sports broadcast or account, or any political campaign" within the meaning of Cal. Civ. Code § 3344.

    d.  The amount by which Defendant profited from and was unjustly enriched by its illegal use of Plaintiffs' and Class members' names, personal information, and personas.

    e.  Whether Defendant's conduct described in this Complaint violates California common law prohibiting the misappropriation of a name or likeness.

    f.  Whether Plaintiffs and the Class are entitled to the injunctive, declaratory, monetary, punitive, and other relief requested in this Complaint.

62.    **Typicality.** Plaintiffs' claims are typical of those of the proposed Class. Plaintiffs and all members of the proposed Class have been harmed by Defendant's misappropriation and misuse of their identities, names, personas, and other personal information in advertisements promoting website subscriptions. Defendant presents its advertisements in the same way for each Class member.

63.     Just as it did with Plaintiffs, Defendant appropriated the names, yearbook photographs, personal information, and personas of all Class members without their prior consent. Defendant's sole purpose in appropriating Class Members' information, photographs, and personas was to solicit the purchase of paid subscriptions.

64.     Just as it did with Plaintiffs, Defendant injured, continues to injure, and imminently threatens to injure all Class members. Defendant injured Class members by misappropriating their intellectual property without compensation. Class members have suffered, and will continue to suffer, monetary harm in the amount they should have been paid as reasonable royalties in exchange for the commercial use of their names and personas. Class members have also suffered, and will continue to suffer, monetary harm in the amount of Defendant's unjust enrichment through its illegal use of their names and personas.

65.     Defendant also has injured and continues to injure Class members by invading and denying them their right to control the commercial use of their names and personas, which is a substantive right long recognized at common law and more recently codified in California's right of publicity statute.

66.     Defendant has injured and continues to injure Class members' dignity and mental well-being by using their names and personas to promote a product they never agreed to promote.

67.     **Adequacy.** The proposed class representative will fairly and adequately represent the proposed Class. Plaintiffs' claims are co-extensive with those of the rest of the Class. Plaintiffs are represented by qualified counsel experienced in class action litigation of this nature.

68.     **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the proposed Class is impracticable. Many members of the Class do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute

concerning Defendant's common actions towards an entire group. Class action procedures allow for the benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

69.    The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Defendant has acted on grounds generally applicable to the proposed Class, such that final injunctive and declaratory relief is appropriate with respect to the Class as a whole.

70.    The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to Class members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

### FIRST CAUSE OF ACTION

### California Right of Publicity Statute, Cal. Civ. Code § 3344

71.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint.

72.    California's right of publicity statute prohibits the "knowing[] use[] of another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent." Cal. Civ. Code § 3344.

73.    By engaging in the foregoing acts and omissions, Defendant used and uses Plaintiffs' and Class members' names, photographs, likeness, personal information, personas, and identities to advertise and sell subscriptions without prior consent.

74.    Plaintiffs' and Class members' names and personas have commercial value, as demonstrated by Defendant's commercial use; similar commercial use by Defendant's competitors, including competitive "people search" websites like Classmates.com, Spokeo, and Intelius; the school and yearbook publishers' commercial use of Plaintiffs' and Class member's names and photographs to sell yearbooks; and Defendant's payment of licensing fees to data

brokers in exchange for the right to make commercial use of names and personas.

75.    Each use of Plaintiffs' or a Class members' name, photograph, and/or personal information in a searchable record on Ancestry.com is a separate and distinct violation of Cal. Civ. Code § 3344.

76.    Cal. Civ. Code § 3344 provides that a person who violates the statute is liable "in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages," in addition to "any profits from the unauthorized use." The statute also provides for "[p]unitive damages" and "attorney's fees and costs."

77.    As a result of Defendant's violation of Cal. Civ. Code § 3344, Plaintiffs and the Class members have suffered injury, and will imminently suffer further injury.

78.    Defendant has injured and continues to injure Class members by misappropriating their intellectual property without compensation. Class members have suffered, and will continue to suffer, monetary harm in the amount they should have been paid as reasonable royalties in exchange for the commercial use of their names and personas. Class members have also suffered, and will continue to suffer, monetary harm in the amount of Defendant's unjust enrichment through its illegal use of their names and personas.

79.    Defendant has injured and continues to injure Class members by invading and denying them their right to control the commercial use of their names and personas, which is a substantive right long recognized at common law and more recently codified in California's right of publicity statute.

80.    Defendant has injured and continues to injure Class members' dignity and mental well-being by using their names and personas to promote a product they never agreed to promote.

81.    Plaintiffs, on behalf of the Class, seek: statutory damages of $750 for each Class member, or an alternative measure to be determined at a later stage of this litigation; actual damages, including Defendant's unjustly earned profits from its unauthorized use, and the amount that should have been paid in reasonable royalties to Plaintiffs and the Class in exchange for the commercial use of their names and personas; punitive damages; nominal damages; the

award of attorneys' fees and costs; the entry of an injunction prohibiting Defendant's illegal conduct; and declaratory relief.

## SECOND CAUSE OF ACTION

### California Tort of Misappropriation of a Name or Likeness

82.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint.

83.     California common law recognizes the tort of "appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Eastwood v. Superior Court*, 149 Cal.App.3d 409, 416 (Cal. Ct. App. 1983).

84.     By engaging in the forgoing acts and omissions, Defendant (1) used the names, photographs, personal information, and identities of Plaintiffs and the Class in advertisements for subscriptions; (2) appropriated Plaintiffs' and Class Members' names and likenesses to Defendant's commercial advantage; (3) failed to obtain Plaintiff's and Class members' consent; and (4) injured Plaintiffs' and Class Members' by causing harms both economic and dignitary. *See Eastwood*, at 417.

85.     Plaintiffs, on behalf of the Class, seeks monetary recovery in the amount of the commercial advantage Defendant derived from its misuse, compensatory damages for Defendant's failure to pay royalties owed, and the entry of an injunction prohibiting Defendant's tortious acts.

## THIRD CAUSE OF ACTION

### California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*

86.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint.

87.     Defendant has and is engaged in unfair competition, as that term is defined in the California Unfair Competition Law, Cal. Bus. & Prof. Code. § 17200 et seq. ("UCL").

88.     As described in this Complaint, Defendant's misappropriation and use without prior consent of Plaintiff's and Class members' names, photographs, personal information,

personas, and identities is a violation of California's Right of Publicity statute, Cal. Civ. Code § 3344 and California common law prohibiting misappropriation of a name or likeness.

89.    By engaging in the conduct described in this complaint and violating California law, Defendant engaged in and continues to engage in "unlawful" business acts and practices prohibited by the UCL.

90.    By engaging in the conduct described in this Complaint, including profiting from the sale and use in advertising of personal information it misappropriated without consent, Defendant engaged in and continues to engage in "unfair" business acts and practices prohibited by the UCL.

91.    As a result of Defendant's actions, Plaintiffs and Class Members have been injured and have lost money and property. Plaintiffs and Class members were denied the fair economic value of their names and personas. Defendant should have paid them and failed to do so. They are entitled to restitution, declaratory relief and injunctive relief.

## PRAYER FOR RELIEF

92.    WHEREFORE Plaintiffs, individually and on behalf of the proposed Class, request the following relief:

a.    An order certifying the proposed Class and appointing Plaintiffs and their counsel to represent the Class;

b.    A declaration that Defendant's acts and omissions constitute a knowing and willful misappropriation of names, photographs, personal information, and personas, and infringe on protected intellectual property and dignitary rights, in violation of California statutory and common law;

c.    Statutory damages in the amount of $750 for each Class member, or an alternative measure to be determined at a later stage of this litigation;

d.    Nominal damages in recognition of Defendant's ongoing violation of the legally protected property and dignitary rights of Plaintiffs and the Class members;

e. Preliminary and permanent injunctive relief enjoining Defendant from continuing to operate www.ancestry.com without appropriate safeguards to ensure Class member's names and personas are not used to advertise without their consent;

f. Restitution to Plaintiffs and Class members of the money Defendant unjustly earned through subscription sales made by misappropriating their names and personas;

g. Damages for actual harm; profits earned by Defendant; and reasonable royalties owned to Plaintiffs and the Class;

h. The award of reasonable attorneys' fees and costs incurred by Plaintiffs and the Class; and

i. Orders granting such other and further relief as this Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.

Dated: April 2, 2025

By: */s/ Andrew Gunem*
Andrew Gunem (SBN 354042)
Samuel J. Strauss (to be admitted *pro hac vice*)
Raina C. Borelli (to be admitted *pro hac vice*)
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

Benjamin R. Osborn (to be admitted *pro hac vice*)
LAW OFFICE OF BENJAMIN OSBORN
63 Fiddlers Elbow Rd.
Margaretville, NY
Telephone: (347) 645-0464
Email: ben@benosbornlaw.com

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)

FIRST AMENDED CLASS ACTION COMPLAINT – 26

mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293

*Attorneys for Plaintiff and the Proposed Class*