UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN GEHRINGER, et al., | Case No. 25-cv-05974-AMO |
| Plaintiffs, | |
| v. | **ORDER RE DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT** |
| ANCESTRY.COM OPERATIONS INC, et al., | Re: Dkt. No. 47 |
| Defendants. | |

Plaintiffs bring this putative class action on behalf of California residents who are not subscribers to Ancestry.com, alleging the Ancestry Defendants misappropriated their names and likenesses to advertise certain features of the site. *See generally* Dkt. No. 19.[1] The First Amended Complaint asserts three causes of action: 1) violation of California's right of publicity statute, Cal. Civ. Code § 3344; 2) the California common law tort of misappropriation of a name or likeness; and 3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*. Defendants move to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Per Rule 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument. Having reviewed the parties' submissions, and the relevant legal authority, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss.

//

//

//

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

United States District Court
Northern District of California

**FACTUAL ALLEGATIONS**

Ancestry.com provides subscription services that allow users to access a number of features, such as the ability to "[g]row a family tree with exclusive search tools," "[c]onnect with fellow members," and "[a]ccess 15+ billion records" to spread the branches of that family tree. Dkt. No. 19 ¶ 11.  Among those records, Ancestry includes a database of yearbook photos and identifying information, which it licenses from third parties to present on its site.  *Id.* ¶ 14.

Plaintiffs are individuals who have not subscribed to the Ancestry.com service and have not consented to the use of their name or photograph.  *Id.* ¶¶ 14-15.  They allege Ancestry not only includes their yearbook information on a searchable database, but also utilizes their likenesses as part of advertisements for Ancestry.com services.  *Id.* ¶¶ 15-16, 19.  The First Amended Complaint sets out three forms of alleged advertising that capitalize on the likenesses of Plaintiffs. First, Ancestry "provides a publicly accessible landing page on which visitors have searched for Plaintiffs by name, location, and/or birth year . . . ."  *Id.* ¶ 40.  Upon searching for an individual, visitors to Ancestry.com can see the name and face of that person based on an uploaded yearbook photo.  *Id.* ¶ 43.  If a user hovers over the "View Record" link to see more information, they are shown a pop-up screen, which notes a subscription is required to view a higher resolution photo or more details.  *Id.* ¶ 45.



Second, Ancestry "sends promotional emails" to potential subscribers, which include names and photos from this database of yearbook information. *Id*. ¶ 48. The emails indicate that Ancestry Hints® may help prospective users make more discoveries in their family tree, and by clicking on the name or photo included in the message, a potential subscriber is directed to Ancestry's subscription pricing webpage. *Id*. ¶¶ 48-49.





Third, Ancestry offers prospective users a two-week free trial, during which a user can access Plaintiffs' yearbook images, names, locations, and workplaces without their consent. *Id*. ¶ 50. This free trial is designed to ultimately solicit a paid subscription from the trial participants. *Id*. ¶ 51.

By using Plaintiffs' names and likenesses in this way, Ancestry has allegedly violated Plaintiffs' intellectual property rights, invaded their privacy, profited from their personas, and caused mental anguish. *Id*. ¶¶ 55-56. Plaintiffs remain "deeply uncomfortable" knowing Ancestry allegedly profits from exploitation of their identities without their consent on a website they do not use. *Id*. ¶ 56.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss the complaint for lack of Article III standing, which divests the Court of subject-matter jurisdiction. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). A 12(b)(1) motion may assert a factual or facial challenge to jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A factual challenge "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction," while a facial challenge argues "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id*. at 1039. To resolve a factual challenge, the court "may review evidence beyond the complaint" and "need not presume the truthfulness of the plaintiff's allegations." *Id*. at 1038. The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor . . . ." *3taps, Inc. v. LinkedIn Corp.*, No. 18-CV-00855-EMC, 2022 WL 16953623, at *4 (N.D. Cal. Nov. 15, 2022) (citing *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)).

To survive a motion to dismiss under Rule 12(b)(6), the "plaintiffs' allegations must suggest that their claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134-35 (9th Cir. 2014) (cleaned up). The district court must assume the plaintiffs'

allegations are true and draw all reasonable inferences in their favor. *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1220 (9th Cir. 2022). However, the court need not construe conclusory statements or unreasonable inferences as true. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**DISCUSSION**

Defendants advance five arguments for dismissal: 1) Plaintiffs fail to plausibly allege an injury in fact sufficient to confer Article III standing; 2) federal copyright laws preempt Plaintiffs' causes of action; 3) Section 230 of the Communications Decency Act immunizes Ancestry against liability; 4) the UCL claim fails because Plaintiffs have failed to plausibly allege an underlying legal violation; and 5) Plaintiffs do not plausibly allege a basis for their prospective or equitable remedies. The Court considers each asserted ground for dismissal in turn.

## I. ARTICLE III STANDING

Ancestry advances a facial attack on the pleadings, arguing Plaintiffs have failed to plausibly allege an injury in fact. Accordingly, in resolving this jurisdictional challenge, the Court assumes the truth of Plaintiffs' allegations and draws all reasonable inferences in their favor. *See 3taps, Inc.*, 2022 WL 16953623, at *4.

Article III of the United States Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Therefore, a plaintiff has standing to sue in federal court only when they can show "(i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* "[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427 (emphasis in original). To determine whether an alleged harm is sufficiently concrete, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 424. "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.*

The Court, therefore, looks to the common law basis here, namely privacy torts. As described by the California Supreme Court:

> The law of privacy comprises four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff . . . "to be let alone." Without any attempt to exact definition, these four torts may be described as follows: (P) 1. Intrusion upon the plaintiff's seclusion or solitude or into his private affairs. (P) 2. Public disclosure of embarrassing private facts about the plaintiff. (P) 3. Publicity which places the plaintiff in a false light in the public eye. (P) 4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

*Lugosi v. Universal Pictures*, 25 Cal. 3d 813, 819 (1979) (citing William Prosser, *Privacy*, 48 Cal. L. Rev. 381, 389 (1960)). Plaintiffs' claim under Section 3344 of the California Civil Code is analogous to the fourth kind of privacy tort—misappropriation of the plaintiff's name or likeness. As framed by the Restatement, a plaintiff holds a right to "the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or to others." Restatement (Second) of Torts § 652C cmt. a. Per this formulation, the common law did not require a plaintiff to show loss of the economic value of his name. Rather, California courts have recognized the tort of misappropriation can cause "injury to the feelings, that concerns one's own peace of mind, and that is mental and subjective." *Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1005 (2008). Plaintiffs allege this precise kind of injury in the First Amended Complaint. *See* Dkt. No. 19 ¶ 56 ("Ancestry's illegal actions caused Plaintiffs mental anguish and disturbed their peace of mind. Plaintiffs are deeply uncomfortable that Ancestry is profiting from its use of their names, photographs, and personas in advertisements for a website they do not use, endorse, or approve of."). These allegations, and the availability of such an action at common law, are sufficient to establish Article III standing for Plaintiffs' Section 3344 claim and misappropriation of likeness claim. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) ("*TransUnion* requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system.").

To counter, Ancestry relies on *Callahan v. Ancestry.com Inc.*, No. 20-CV-08437-LB, 2021 WL 2433893 (N.D. Cal. June 15, 2021), arguing the mental anguish alleged here is not an injury

United States District Court
Northern District of California

United States District Court
Northern District of California

in fact. Dkt. No. 47 at 13-14. In *Callahan*, the court considered similar causes of action brought against Ancestry based on its database of yearbook photos. *Id*. at \*1. Holding the plaintiffs had failed to plausibly allege standing, the court cited *Miller* as requiring "knowledge of commercial loss and/or defamation" to be a component of mental harm in order to satisfy Article III. *Id*. at \*4 (quoting *Miller*, 159 Cal. App. 4th at 1006 n.12). Since the plaintiffs had not alleged any commercial loss or defamation, their allegations of mental harm were deemed insufficient. *Id*. The Court does not find that interpretation of *Miller* persuasive. Indeed, the *Miller* court's analysis of the common law showed misappropriation claims have "two aspects." *Miller*, 159 Cal. App. 4th at 1005. The first aspect encompasses "the right of publicity protecting the commercial value of celebrities' names and likenesses." *Id*. The second concerns non-celebrity plaintiffs, who may lack a financial interest in their likeness, but even so, the misappropriation "brings injury to the feelings, that concerns one's own peace of mind, and that is mental and subjective." *Id*. Both the *Callahan* court and Ancestry appear to acknowledge only the first aspect, while failing to examine how the second aspect fits the allegations presented here. To wit: the injury from misappropriation need not be financial; it can arise from the mental anguish inflicted by the act of misappropriation itself. In so holding, this Court is not alone. *See, e.g.*, *Mannacio v. Information.com LLC*, No. 24-CV-01717-JSW, 2024 WL 4557678, at \*3 (N.D. Cal. Oct. 22, 2024) (holding plaintiffs had standing to assert a misappropriation of likeness claim based on similar allegations of injury and collecting other district court cases holding the same).

Ancestry's reliance on *TransUnion* fares no better. In short, Ancestry argues Plaintiffs allege a bare statutory violation of Section 3344, and if being "deeply uncomfortable" were enough to confer standing, *TransUnion* would have been decided differently. Dkt. No. 47 at 13. But Ancestry misunderstands the Supreme Court's analysis. There, the Court held the plaintiffs had not plausibly alleged a concrete injury since the defendant credit reporting agency had not published their credit reports—which contained false information—to any third party. *TransUnion LLC*, 594 U.S. at 434-36. Looking to the common law analogue of defamation, the Court concluded *publication* was essential to establishing concrete harm. *Id*. at 434-35. Historically, "the basis of the action for words was the loss of credit or fame, and not the insult,"

7

so "it was always necessary to show a publication of the words." *Id*. at 434 (quoting J. Baker, AN INTRODUCTION TO ENGLISH LEGAL HISTORY 474 (5th ed. 2019)).  The Court did not need to consider mental anguish because the common law analogue expressly required publication to cause injury.  This differs from an action for misappropriation of likeness, which comprises a theory of injury grounded in mental anguish from the unlawful act alone.  Considering the common law analogue, as *TransUnion* requires, shows Plaintiffs' theory of injury has been recognized as "a basis for a lawsuit in American courts." *Id*. at 424.

Accordingly, Plaintiffs have met their burden to plausibly allege standing.  Ancestry's motion to dismiss under Rule 12(b)(1) is **DENIED**.

## II.    COPYRIGHT ACT PREEMPTION

Next, Defendants assert Plaintiffs' misappropriation claims are preempted by Section 301 of the Copyright Act, which provides, in relevant part:

> . . . all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).  The Ninth Circuit applies a two-part test to determine whether a cause of action is preempted by federal copyright law. *See Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017).  First, the Court considers "whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Id*. (quoting *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006)).  If Plaintiffs' claims fall within the ambit of Sections 102 and 103, then the Court determines "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Id*. (citation omitted).  Here, Plaintiffs' claims do not fall entirely within the two-part test, and therefore, are not preempted.

The Ninth Circuit has previously considered the interaction between a right of publicity claim under Section 3344 and copyright preemption:

8

[A] publicity-right claim is not preempted when it targets non-consensual use of one's name or likeness on merchandise or in advertising. But when a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use, a publicity-right claim interferes with the exclusive rights of the copyright holder, and is preempted by section 301 of the Copyright Act.

*Maloney*, 853 F.3d at 1011.  In so concluding, the Ninth Circuit noted that photos fall within the subject matter of the copyright laws, but that misappropriation claims based on use of copyrighted photos in advertising are not ultimately preempted.  *Id*. at 1011, 1016.  So, the Court must determine whether the alleged use of Plaintiffs' yearbook photos and information on Ancestry.com constitutes "advertising."

To establish the contours of "advertising," the Court looks to analogous Ninth Circuit caselaw.  For instance, in *Maloney*, the defendant ran a website which permitted consumers to "view digital thumbnails" of copyrighted photos of professional athletes.  *Id*. at 1007.  Consumers could then pay for "a non-exclusive license permitting them to download a copy of a chosen photograph" for their personal use.  *Id*.  The Ninth Circuit held the athletes' tort of publicity claims were preempted because the defendant did not use the images "in connection with the sale of any merchandise" or advertising.  *Id*. at 1018.  Similarly, in *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1155 (9th Cir. 2010), the Ninth Circuit determined a film performer's Section 3344 claim was preempted by copyright law.  There, the defendant had sold counterfeit DVDs of the actor's performance, which included stills of the performance on the cover of the discs.  *Id*. at 1154.  The court noted the front cover of the DVDs did not constitute misappropriation of his likeness because the cover only included parts of the copyrighted work, which itself could not be the subject of the Section 3344 claim.  *Id*.  Separately, in *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001), the court held the plaintiffs' misappropriation of likeness claim was *not* preempted.  The plaintiffs were surfers who had competed in the 1965 Makaha International Surf Championship, where a photographer had taken photos of them.  *Id*. at 1000.  The defendant purchased some of the photographs, and used one in a quarterly advertising campaign, while also including "t-shirts, exactly like those worn by the [plaintiffs] in the photograph, for sale in the upcoming issue."  *Id*.  Concluding the plaintiffs'

Section 3344 claim was not preempted, the court noted the photos suggested the plaintiffs "endorsed" the t-shirts. *Id*. at 1008; *see also Laws*, 448 F.3d at 1141 (explaining the result in *Downing* was driven by the defendant's use of the photo "in connection with a broad surf-themed advertising campaign," which "identified the plaintiffs-surfers by name, and offered for sale the same t-shirts worn by the plaintiffs in the photo").

With these factual scenarios in mind, the Court turns to Plaintiffs' allegations of advertising here. In sum, Plaintiffs contend Ancestry used their likeness in three forms of "advertising": 1) publication of the yearbook information on a database that contains a paywall for certain features; 2) dissemination of emails to potential Ancestry.com subscribers, noting Ancestry Hints® can expand their family tree, and using the names and images of Plaintiffs as examples; and 3) an Ancestry free trial program that allows potential subscribers to access Plaintiffs' yearbook information for a limited time. Dkt. No. 19 ¶¶ 40-51. Of these allegations, the first and third fall within the scope of copyright preemption. Both *Maloney* and *Jules Jordan* instruct that use of the copyrighted image to effect sale of the copyrighted image, does not qualify as "advertising" for purposes of preemption. In *Maloney*, the defendant permitted potential customers to view thumbnails of the copyrighted images prior to purchasing a license, creating, in effect, a paywall. 853 F.3d at 1007. Likewise, in *Jules Jordan*, the use of stills from the copyrighted videos on the cover of the counterfeit DVD case was not considered "advertising" that appropriated the plaintiff's likeness for commercial gain. 617 F.3d at 1154. Here, Plaintiffs allege visitors to Ancestry.com, or participants in a free trial, gain access to Plaintiffs' yearbook information. From the site, a potential subscriber can see thumbnails of the yearbook photos, but if they wish to gain access to the high-resolution version, they must subscribe to Ancestry's service. Dkt. No. 19 ¶¶ 43-45. These allegations mirror the facts underlying *Maloney* and *Jules Jordan*, both of which hold copyright preemption bars a related Section 3344 claim.

However, Plaintiffs' second set of allegations differ, and permit a plausible inference that Ancestry used their likenesses to advertise its services. The emails allegedly sent by Ancestry to prospective subscribers mention Ancestry Hints®, a trademarked feature of the Ancestry platform, which can help a user expand their family tree. *Id*. ¶¶ 48-49. To entice consumers into paying for

10

United States District Court
Northern District of California

a subscription, the email includes the names and images of Plaintiffs as potential avenues of growing that tree. *Id*. And when a consumer clicks on the name or image, they are redirected to the payment portal for Ancestry.com subscription plans. *Id*. These allegations hew more closely to the facts in *Downing*, where the plaintiffs' surfing image was used to sell a *different* product than the image itself, i.e. t-shirts. 265 F.3d at 1000. A reasonable inference to be drawn from these allegations is that Ancestry encouraged consumers to purchase a subscription by presenting an attractive basis for expanding the user's family tree, namely, access to information about Plaintiffs. *See Callahan v. PeopleConnect, Inc.*, No. 20-CV-09203-EMC, 2021 WL 5050079, at *11 - *12 (N.D. Cal. Nov. 1, 2021) (holding advertisement of the copyrighted work itself is preempted by federal copyright law, but advertisement of a subscription service using the plaintiffs' yearbook photos was not preempted). Ancestry's alleged use permits a reasonable inference of misappropriation of likeness outside of a copyright holder's rights, and therefore, is not preempted.

For these reasons, Plaintiffs' claims grounded in the first or third theories of advertising are preempted by federal copyright law, while Plaintiffs' claims based on the second theory of advertising are not. Accordingly, Ancestry's motion to dismiss Plaintiffs' claims as preempted is **GRANTED IN PART**, as to the first and third theories, and **DENIED IN PART**, as to the second theory.

## III.    SECTION 230 OF THE COMMUNICATIONS DECENCY ACT

"Section 230 of the Communications Decency Act ("CDA") 'immunizes providers of interactive computer services against liability arising from content created by third parties.'" *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265 (9th Cir. 2016) (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc)). The provision at issue here, Subsection (c)(1) of the statute, "only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Id*. at 1268. If the "interactive computer service provider" is "responsible, in whole or in part, for the creation or development of the offending content," Section 230's

11

immunity does not attach. *Fair Hous. Council of San Fernando Valley*, 521 F.3d at 1162. Here, Plaintiffs have plausibly alleged facts to support an inference that Ancestry acted as an "information content provider," and thus Section 230 does not shield it from liability.

As discussed in the Court's analysis of copyright preemption, Plaintiffs allege Ancestry crafted email advertisements that included their likenesses to encourage potential customers to subscribe to Ancestry's service. Dkt. No. 19 ¶¶ 48-49. The email advertisements were not created by a third-party user of Ancestry.com—Ancestry authored the content, and as such, it is "responsible, in whole or in part, for the creation" of that offending content. 47 U.S.C. § 230(f). To avoid this conclusion, Ancestry attempts to recast the allegations in the First Amended Complaint, asserting Ancestry merely "republish[es] yearbook photos taken and first published by Esperanza High School." Dkt. No. 47 at 15. But as the screenshots in the Complaint confirm, the emails sent by Ancestry to prospective users include far more than republished images of Plaintiffs; they incorporate those images into an advertisement for the Ancestry Hints® functionality and Ancestry's subscription service. Drawing all inferences in Plaintiffs' favor, Section 230 does not immunize Ancestry against liability for the content of the alleged email advertisements.[2]

So, Ancestry's motion to dismiss based on Section 230 immunity is **DENIED**.

## IV.    STATUTORY STANDING UNDER CAL. CIV. CODE § 3344

Section 3344 states, in relevant part:

> Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, without that person's prior consent, or, in the case of a minor, the prior consent of their parent or legal guardian, ***shall be liable for any damages sustained by the person or persons injured as a result thereof***.

Cal. Civ. Code § 3344(a)(1) (emphasis added). This statutory language includes an injury

---

[2] Since the question of Section 230 immunity can be resolved on these grounds alone, the Court does not reach the parties' arguments as to whether Ancestry reasonably believed the yearbook information was intended, by its creator, to be published on the internet.

element, which requires Plaintiffs to establish they were injured as a result of the alleged misappropriation. Ancestry contends Plaintiffs have failed to allege mental anguish or any other injury sufficient to satisfy statutory standing. For the reasons stated in the Court's analysis of the parties' arguments on Article III standing, the Court determines Plaintiffs have plausibly alleged such injury. *See* Section I, *supra*.

Therefore, Ancestry's motion to dismiss the Section 3344 claim for lack of statutory standing is **DENIED**.

## V.    UNFAIR COMPETITION LAW

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Thus, "[t]o prevail on a claim under the unlawful prong of the unfair competition law, the plaintiff must show that a challenged advertisement or practice violates any federal or California 'statute or regulation.'" *Beasley v. Tootsie Roll Indus., Inc.*, 85 Cal. App. 5th 901, 911-12 (2022) (citation omitted). In addition, the UCL requires a plaintiff plausibly allege statutory standing, that is, they must: "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Ct.,* 51 Cal. 4th 310, 322 (2011) (emphasis in original). Here, Ancestry asserts Plaintiffs have failed to plausibly allege statutory standing; the Court agrees.

Statutory standing under the UCL differs from Article III standing. Its "economic injury requirement is 'more restrictive than federal injury in fact' because it encompasses fewer kinds of injuries." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017). The Ninth Circuit's analysis in *Van Patten* proves instructive on this point. There, the plaintiff asserted violations of the Telephone Consumer Protection Act and the California UCL, among other claims. *Id*. at 1041. As a prior member of Gold's Gym, the plaintiff had provided his cell

13

phone information, which was ultimately shared with another company that sent unsolicited text messages to the plaintiff. *Id*. He alleged the unwanted text messages "'caused consumers actual harm,' including 'the aggravation that necessarily accompanies wireless spam.'" *Id*. In determining whether the plaintiff had established Article III standing, the court held the messages "invade the privacy and disturb the solitude of their recipients," which is a sufficiently concrete injury. *Id*. at 1043. However, the court affirmed summary judgment on the UCL claim because the same allegations did not afford the plaintiff statutory standing. *Id*. at 1048-49. Noting the UCL requires an *economic* injury, the Ninth Circuit concluded vexation caused by the text messages was not enough to establish statutory standing, absent some showing of lost money or property. *Id*. at 1049.

Turning to the instant case, Plaintiffs allege mental anguish caused by the misappropriation of their likenesses—an injury sufficient to confer Article III standing. However, they offer only conclusory allegations of any other harm. *See In re Gilead Scis. Sec. Litig*., 536 F.3d at 1055 (noting the district court need not assume the truth of conclusory allegations). Though Plaintiffs aver Ancestry injured them "by taking their intellectual property without compensation," they offer no factual support to identify or describe that intellectual property. Dkt. No. 19 ¶ 55. Moreover, Plaintiffs do not supply any allegations to establish their likenesses have independent economic value on the market. Absent a plausible economic injury, Plaintiffs cannot advance their UCL claim.

For these reasons, Ancestry's motion to dismiss the UCL claim for lack of statutory standing is **GRANTED**, with leave to amend.

//

//

//

//

//

//

//

14

## VI.     REMEDIES

Regarding remedies, Ancestry contends Plaintiffs have failed to plausibly allege a threat of future harm sufficient to seek prospective relief. Dkt. No. 47 at 14. Since Ancestry has made Plaintiffs unsearchable on their yearbook database, it argues, there is no risk of future misappropriation of their likenesses. Additionally, Ancestry asserts Plaintiffs have failed to plead a lack of available remedies at law, and under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), their equitable claims should be dismissed. Dkt. No. 47 at 19-20. Neither argument has merit.

As to Ancestry's first argument, removal of Plaintiffs from the online searchable database is simply unrelated to use of Plaintiffs' likenesses in email marketing. Ancestry's voluntary cessation ultimately has no bearing on the conduct Plaintiffs have plausibly alleged is unlawful. Regarding the second argument, *Sonner* does not compel the result Ancestry suggests. A significant number of district courts in the Ninth Circuit have not interpreted *Sonner* to require dismissal of equitable claims at the pleading stage. *See, e.g.*, *In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1012 (N.D. Cal. 2023) (collecting cases). As explained in *Baton v. Ledger SAS*, courts typically "'decline[ ] to trim out Plaintiff's equitable restitution claim at [the motion to dismiss] stage' but [the] 'Plaintiff's entitlement to seek the equitable remedy of restitution may be revisited at a later stage.'" 740 F. Supp. 3d 847, 905 (N.D. Cal. 2024) (citation omitted). That said, the Court has dismissed Plaintiffs' UCL claim with leave to amend, the basis for equitable relief. So, Ancestry's *Sonner* argument is ultimately moot.

Consequently, Ancestry's motion to dismiss Plaintiffs' request for prospective relief is **DENIED**, and Ancestry's arguments as to the adequacy of available legal remedies are **MOOT**.

### CONCLUSION

Based on the foregoing reasons, Ancestry's Rule 12(b)(1) motion is **DENIED**. Ancestry's motion to dismiss the Section 3344 and misappropriation of likeness claims under Rule 12(b)(6) is **DENIED**. Further, Ancestry's motion to dismiss Plaintiffs' claims as preempted by federal copyright law is **GRANTED IN PART**, as to the first and third theories, and **DENIED IN PART**, as to the second theory. Ancestry's motion to dismiss the UCL claim for lack of statutory

15

standing is **GRANTED**, with leave to amend. Should Plaintiffs choose to amend their allegations, the Second Amended Complaint must be filed no later than 21 days from the date of this Order. Plaintiffs may not add additional defendants or claims absent stipulation between the parties or leave of Court.

**IT IS SO ORDERED.**

Dated: March 16, 2026

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**